David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
STANLEY S.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY S.<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY; PLAYWORKS EDUCATION ENERGIZED; PLAYWORKS WELFARE BENEFITS PLAN; and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF STANLEY S.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, STANLEY S. herein sets forth the allegations of this Complaint against Defendants AETNA LIFE INSURANCE COMPANY; PLAYWORKS EDUCATION ENERGIZED; PLAYWORKS WELFARE BENEFITS PLAN ("the Plan") and DOES 1 through 10.

## PRELIMINARY ALLEGATIONS
### JURISDICTION

1. Plaintiff brings this action for relief pursuant to Section 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B),

and (a)(3). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e), (f) and (g), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan, and enforcing Plaintiff's rights under the terms of an employee benefit plan named as a Defendant.

3. Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendants' improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; and attorneys' fees and costs; and any other form of equitable relief that may arise during the pendency of this action and that the Court may deem appropriate.

**PARTIES**

4. Plaintiff is and at all times relevant was a resident of the State of California.

5. At all relevant times, STANLEY S. participated in an employee welfare benefit plan, PLAYWORKS WELFARE BENEFITS PLAN, ("the Plan") within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by his employer, Defendant PLAYWORKS EDUCATION ENERGIZED.

6. At all relevant times, AETNA LIFE INSURANCE COMPANY ("Aetna") was and is a corporation whose primary place of business is located in the State of California.

7. Mental Health claims under the Plan were at all relevant times administered by Aetna and/or its third-party designee.

8. A.D. is STANLEY S.'s child and a Plan beneficiary.

9. A.D. is a male-to-female transgender adolescent, hereinafter referred to by the pronouns she/her/hers.

10. At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Plan's claim administrator.

**FACTS**

11. The Plan guarantees, warrants, and promises coverage for medically necessary health care services, care and treatment, including but not limited to: health care services, mental health care, and the treatment at issue herein.

12. At all relevant times A.D. was a beneficiary of the Plan, and the Plan was in full force and effect.

13. The Summary Plan Description defines Medically Necessary services as services as

> Health care services that a **provider** exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an **illness, injury**, disease or its symptoms, and that are:
> - In accordance with generally accepted standards of medical practice
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's **illness, injury** or disease
> - Not primarily for the convenience of the patient, **physician**, or other health care **provider**
> - Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's **illness, injury** or disease

14. The Plan contemplates treatment for participants and beneficiaries in a residential treatment center.

15. The Plan covers mental health expenses and services including "Inpatient room and board at the semi-private room rate, and other services and supplies related to your condition that are provided during your stay in a hospital, psychiatric hospital, or residential treatment facility."

16. California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

17. A.D. was diagnosed with, *inter alia,* gender dysphoria, depression, anxiety, ADHD, eating disorder, and substance use.

18. At a young age, A.D. began displaying severe behavioral problems at home and at school.

19. In pre-school, A.D. was found being sexual with another peer in the bathroom and, on another occasion, was found smearing excrement on the bathroom wall.

20. In 6th grade, A.D. began eating compulsively and also questioning her gender identity. She began seeing a therapist who specializes in adolescents and gender identity.

21. A.D. eventually exhibited episodes of violence and manipulation, at one time punching her father in the face and then calling the police to report child abuse.

22. After it was reported to her parents that A.D. had suicidal ideations, she was admitted to Edgewood Center for Children and Families Crisis Stabilization Unit (CSU).

23. A.D. continued seeing her therapist, participated in dialectical behavioral therapy (DBT), and began seeing a psychiatrist, who prescribed her Zoloft.

24. Despite this ongoing treatment, A.D.'s mental health continued to deteriorate. Family members had to sleep with doors locked out of fear A.D. would become violent. A parent had to work from home every day so A.D. was supervised and remained safe.

25. A.D. made death threats to others at school.

26. A.D. was again placed in the CSU again after a box of chemicals was found in her backpack along with a note saying she wanted to kill everyone at her school.

27. Following her CSU stay, A.D. was admitted to a partial hospitalization program at the Edgewood Center.

28. The treatment at Edgewood lasted ten days. However, upon her return home each evening A.D. engaged in self-harm and made threats of violence to others.

29. As a result of A.D.'s failed outpatient therapy, her ongoing suicidality and/or homicidal threats, and the ineffectiveness of A.D.'s medications, her treating mental health providers unanimously recommended that A.D. be treated at a residential treatment facility that offered 24/7 supervision and treatment. A.D. was then admitted to the Elevations Residential Treatment Center ("Elevations").

30. At all times relevant, A.D.'s treatment at Elevations was medically necessary, based upon the reasoned medical opinions of A.D.'s mental health providers.

31. Plaintiff filed claims for mental health benefits with Defendants for A.D.'s treatment at Elevations.

32. Aetna and/or Aetna's contracted utilization review service provider initially approved Plaintiff's claims for treatment, for approximately six weeks.

33. Aetna and/or Aetna's contracted utilization review service provider, however, then denied Plaintiff's claims for continued treatment at Elevations.

34. Individuals, and particularly adolescents, who reach the point where prior outpatient modalities of therapy no longer work, and who require inpatient treatment at an inpatient, residential, facility, on average require treatment periods of between six months to eighteen months.

35. The required treatment period at a residential treatment facility increases where, as herein, the patient suffers from multiple, co-morbid, mental health conditions.

36. Plaintiff timely appealed Aetna's claim denials.

37. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's appeal.

38. Plaintiff submitted a level two appeal.

39. Aetna both individually and by and through its utilization review service provider, on behalf of the Plan, denied Plaintiff's level two appeal.

40. The level of care guidelines used by Aetna to deny A.D.'s care fall below reasonable standards of care in the medical community, as explained by the court in *Wit v. United Behavioral Health*, 2019 WL 1033730 (N.D.Cal. March 5, 2019).

41. Aetna breached the generally accepted standard of care herein by failing to accept and consider that treatment is not limited to simply alleviating an individual's current mental health symptoms, and by ignoring and failing to consider the long-term, chronic nature of A.D.'s mental health needs.

42. Aetna breached the generally accepted standard of care herein by failing to accept and consider that effective treatment of co-morbid or co-occurring behavioral health disorders requires consideration of the interaction of these disorders, and the implications of these disorders on determining the proper and appropriate level of care.

43. Aetna breached the generally accepted standard of care herein by failing to accept and consider that where there is ambiguity over the proper level of care, that practitioners should err on the side of caution and should place patients in the higher level of care.

44. Aetna breached the generally accepted standard of care herein by improperly focusing on acute symptomology and failing to consider that the same level of care is needed when an acute crisis has passed, and by failing to consider the likelihood of regression and risk of further acute symptomology.

45. All of the above failures, *inter alia*, constitute an abuse of discretion by Aetna in the handling of A.D.'s claims for mental health care and treatment.

46. As a result, Plaintiff was forced to pay for A.D.'s care and treatment at Elevations from his own personal funds.

47. Plaintiff has exhausted all administrative remedies regarding the denial of A.D.'s mental health benefits.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against AETNA LIFE INSURANCE COMPANY; PLAYWORKS EDUCATION ENERGIZED; PLAYWORKS WELFARE BENEFITS PLAN; and DOES 1-10 For Plan Benefits, Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

48. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

49. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

50. At all relevant times, Plaintiff, and his child, A.D. were insured under the health care plan at issue herein. At all relevant times, A.D. met the medical necessity criteria for treatment required under the terms and conditions of the Plan.

51. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

52. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)
### (against Defendants AETNA LIFE INSURANCE COMPANY; PLAYWORKS EDUCATION ENERGIZED; PLAYWORKS WELFARE BENEFITS PLAN; DOES 1-10)

53. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

54. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

55. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

56. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

57. In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

58. Plaintiff is further informed and believes, and thereon alleges, that Defendants have approved identical or comparable benefits to other participants under circumstances similar to those of the Plaintiff. The failure to provide benefits to Plaintiff when they have done so for other Plan participants in similar circumstances constitutes a breach of fiduciary duties in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

59. As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

60. Wherefore, Plaintiff is entitled to appropriate equitable relief including but not limited to injunction, disgorgement, and surcharge.

## PRAYER FOR RELIEF

### AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

61. Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

62. Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

63. For appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to a declaration of Plaintiff's rights hereunder with respect to Defendants AETNA LIFE INSURANCE COMPANY; PLAYWORKS EDUCATION ENERGIZED; PLAYWORKS WELFARE BENEFITS PLAN; an injunction against further failure to provide like benefits; injunctive relief requiring Defendants to adjudicate claims for mental and behavioral health benefits utilizing generally accepted standards of care; removal of Aetna as a Plan fiduciary; disgorgement of any profits or ill gotten gain realized by any Defendants; and surcharge for any pecuniary injuries Plaintiff has suffered as a consequence of Defendants' breaches of their ERISA fiduciary duties;

64. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

65. Provide such other relief as the Court deems equitable and just.

**AS TO ALL CAUSES OF ACTION:** For such other and further relief as the Court deems just and proper.

Dated: October 14, 2021                    Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, STANLEY S.